IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| v. | * | |
| | | **Criminal No.: RDB-18-400** |
| **JUSTIN HOPKINS,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

On March 7, 2019 Defendant Justin Hopkins ("Defendant" or "Hopkins") pled guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). (ECF No. 22.) On August 12, 2019, this Court sentenced Hopkins to 84 months of imprisonment with credit for time served in federal custody since August 1, 2018 and a three-year term of supervised release. (ECF No. 40.) Having served less than half of that sentence, Hopkins filed a *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) on January 7, 2021 in which he asserts that the on-going COVID-19 pandemic has created extraordinary and compelling reasons for his immediate release. (ECF No. 44.) Also pending before this Court is a Motion for Appointment of Counsel to assist him in seeking compassionate release relief. (ECF No. 43.) For the reasons that follow, both Motions (ECF Nos. 43, 44) are DENIED.

## BACKGROUND

On July 26, 2018, Defendant Hopkins was charged in a single-count Indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). (ECF No. 1.) On

March 7, 2019, Hopkins pled guilty to that Section 922(g) charge pursuant to a Plea Agreement. (ECF Nos. 22, 23.) Pursuant to that Plea Agreement, Hopkins made certain factual and sentencing guidelines stipulations. (ECF No. 23.) As to the facts, Hopkins stipulated that on February 22, 2018 he fired a gun at the father of his girlfriend's son after the two men had exchanged physical threats. (*Id.*) On that date, Hopkins and his girlfriend, "C.C." were waiting for the arrival of C.C.'s son at their residence in Baltimore, Maryland. (*Id.*) C.C.'s son was being dropped at their home by his father, "D.J." (*Id.*) When D.J. arrived, he was accompanied by his own girlfriend, "K.C.", as well as C.C.'s son. (*Id.*) After Hopkins and D.J. exchanged verbal threats, Hopkins went inside and emerged from the top floor window of the home with a gun. (*Id.*) D.J. walked in the middle of the street and dared Hopkins to shoot him. (*Id.*) Hopkins fired multiple rounds at D.J. but missed. (*Id.*) D.J. and K.C. fled the scene, and Hopkins shot at their car as they drove away. (*Id.*) Despite Hopkins' attempt to hide the gun, a .22 caliber sawed off rifle and spent ammunition were ultimately recovered, and after his arrest, Hopkins made a recorded jail call to C.C. in which he admitted to shooting at the vehicle driven by D.J. and K.C. (*Id.*)

With respect to the Federal Sentencing Guidelines, Hopkins agreed to a total offense level of 24, which took into account his acceptance of responsibility in this matter as well as upward adjustments for (1) his use of a firearm "in connection with the commission of another offense," in this case, "Assault with Intent to Commit Murder"; and (2) the fact the "offense created a substantial risk of death or serious bodily injury to more than one person." (*Id.*) The parties did not come to any agreement with respect to the Defendant's criminal history. (*Id.*)

Hopkins stipulated that he understood that his criminal history could alter his offense level. (*Id.*)

At sentencing on August 12, 2019, this Court accepted the Government's request for a two-level upward adjustment pursuant to Section 2A2.1 application note 2 of the advisory guidelines because the offense at issue created a risk of death or serious bodily injury to more than one person. (ECF No. 41.) A final offense level of 26 and a Criminal History Category of II dictated an adjusted guidelines range of 70 to 87 months' imprisonment. This Court sentenced Hopkins to 84 months' imprisonment with time served in federal custody since August 1, 2018, and a supervised release term of three years. (ECF No. 40.)

On November 30, 2020, Defendant Hopkins filed a Motion for Appointment of Counsel (ECF No. 43) in which he requested that this Court provide him with a lawyer to assist him in seeking compassionate release relief. In such Motion, Hopkins asserts that he suffers from asthma and bronchitis and that he previously submitted a request for relief from the Warden of his prison. (*Id.*) On January 7, 2021, Hopkins filed a *pro se* Motion for Compassionate Release (ECF No. 44) in which he again asserts that the suffers from asthma and bronchitis. He also asserts in that Motion that he uses a breathing machine. (*Id.*) Attached to his Motion is the denial of a request for compassionate release relief from the Warden at FCI Petersburg Medium dated December 10, 2020. (ECF No. 44-1.) Also attached are Hopkins' medical records, which suggest that Hopkins has at times complained of chest pain and shortness of breath and does have an inhaler prescribed to treat his asthma. (*Id.*) However, those records also show that the has had normal "peak flows" and oxygen levels, his lungs have remained clear, and he has not been wheezing. (*Id.*) The records also suggest

that on October 5, 2020 Hopkins admitted he did not know how to use his inhaler. (*Id.*) On that date, he also allegedly reported to his doctor that he has had to go to the emergency room on multiple occasion due to bronchitis. (*Id.*) The records do not suggest Hopkins has been diagnosed with bronchitis in recent months. On February 11, 2021, the Office of the Public Defender filed correspondence with this Court indicating it would not be supplementing Hopkins' *pro se* Motion or asking for appointment of counsel in this matter. (ECF No. 46.)

Hopkins is currently housed at FCI Petersburg Medium.[1] At this time, there are no active infections of the COVID-19 virus among inmates at that facility.[2] Within Petersburg FCC, 379 staff members and 1,952 inmates have received a COVID-19 vaccine.[3]

When Hopkins was sentenced in this case, he had one prior adult criminal conviction. (ECF No. 32.) In 2008, Hopkins was convicted of armed robbery and handgun use in committing a crime in the Circuit Court for Baltimore City, Maryland. (*Id.*) He received a sentence of effectively five years and served more than three and a half years. (*Id.*)

## ANALYSIS

The First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison. Before the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court. With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence.

---

[1] *See* Bureau of Prisons, *Find An Inmate*, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited Aug. 10, 2021).
[2] Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Aug. 10, 2021).
[3] Bureau of Prisons, *COVID-19 Vaccine Implementation*, https://www.bop.gov/coronavirus/ (last visited Aug. 10, 2021).

The Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the Defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" and after weighing the factors presented in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i). Attached to Hopkins' *pro se* Motion is a copy of a denial of Hopkins' request for compassionate release from the Warden of his facility signed on December 10, 2020. (ECF No. 44-1.) This Court therefore has jurisdiction over Hopkins' *pro se* Motion and will consider whether he has presented extraordinary and compelling reasons for his requested relief.

The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). 28 U.S.C. § 994(t). Of relevance here, the Commission has determined that "extraordinary and compelling reasons" exist where a defendant is "suffering from a serious physical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Additionally, the Sentencing Commission has authorized the BOP to identify other extraordinary and compelling reasons "other than, or in combination with" the reasons identified by the Commission. *Id.* § 1B1.13 cmt. n.1(D).

Although potentially useful guides, neither the Sentencing Commission's guidelines nor the BOP's regulations constrain this Court's analysis. The First Step Act embodies Congress's

5

intent to reduce the BOP's authority over compassionate release petitions and authorizes the district courts to exercise their "independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Bryant*, CCB-95-0202, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020). As the United States Court of Appeals for the Fourth Circuit explained in *United States v. McCoy*, "district courts are 'empowered . . . to consider *any* extraordinary and compelling reasons for release that a defendant might raise.'" 981 F.3d 271, 284 (4th Cir. 2020) (emphasis in original) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). Exercising that discretion, this Court has determined that a heightened susceptibility to COVID-19 may present extraordinary and compelling reasons for a sentence reduction. *See, e.g.*, *United States v. Hurtt*, JKB-14-0479, 2020 WL 3639987, at *1 (D. Md. July 6, 2020).

In his Motion, Defendant Hopkins asserts that he suffers from asthma and bronchitis. With respect to the alleged bronchitis, medical records provided to this Court suggest that Hopkins has not been diagnosed with bronchitis since the outbreak of the COVID-19 virus in 2020. (ECF No. 44-1.) The only indication of any history of bronchitis is a note written by his doctor on October 5, 2020 which asserts that Hopkins reported that he has had to go to the emergency room with bronchitis in the past. (*Id.*) With respect to the Defendant's asthma, the Centers for Disease Control and Prevention ("CDC") has not indicated that having asthma generally (as opposed to "moderate to severe asthma" specifically) increases one's likelihood of becoming severely ill with COVID-19.[4] *See e.g., United States v. Brown*, No.

---

[4] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 10, 2021).

ELH-01-377, 2020 WL 574194, at *6 (D. Md. Sep. 25, 2020) (holding that asthma that is not "moderate to severe" does not create an extraordinary and compelling reason for release). Although Hopkins alleges that he uses an inhaler and "breathing machine," medical records do not indicate that he has either moderate or severe asthma. (*Id.*) As noted above, the records suggest that his lungs have remained clear, he has not been observed to be wheezing, and his oxygen levels and "peak flows" are normal. (*Id.*) As also noted above, just a month prior to filing his motion requesting appointment of counsel in this matter, Hopkins admitted that he did not even know how to use his prescribed inhaler. (*Id.*) Based on the medical records provided to this Court, it does not appear that the Defendant's asthma is of a sufficient severity to create an extraordinary and compelling reasons warranting his release.

Additionally, while the COVID-19 pandemic created an elevated risk for Defendant Hopkins and others in BOP facilities, the rollout of three vaccines for COVID-19 (Pfizer, Moderna, and Johnson & Johnson), has lowered that risk in recent months. As Judge Hollander of this Court has noted, the BOP has been receiving vaccine shipments since December 16, 2020. *United States v. Graves*, No. ELH-18-17, 2021 WL 1909631, at *8-9 (D. Md. May 11, 2021) (citing Walter Pavlo, *Federal Bureau of Prisons Starts Vaccination of Staff, Inmates Soon Thereafter*, Forbes (Dec. 21, 2020), https://www.forbes.com/sites/walterpavlo/2020/12/21/federal-bureau-of-prisons-starts-vaccination-of-staff-inmates-soon-thereafter/?sh=5683b99aa96f). Since then, vaccination levels have increased: at FCC Petersburg, where the Defendant is imprisoned, the BOP reported as of August 10, 2021, that 379 staff members and 1,952 inmates have been

inoculated with the vaccine.[5]  Additionally, rates of infection have decreased: there are no active infections among inmates at Petersburg FCC.[6]  Given Hopkins' asthma does not appear to be moderate or severe and the availability of COVID-19 vaccines, this Court is satisfied that Hopkins has not presented extraordinary and compelling reasons for relief.

Moreover, even if Hopkins were able to put forth extraordinary and compelling reasons for this Court to consider his Motion and requested relief, Defendant Hopkins has not shown that a reduction in his sentence would be consistent with the factors set forth under 18 U.S.C. § 3553(a).  Under § 3553(a), the court considers (1) Hopkins' personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants.  *See Bryant*, 2020 WL 2085471, at *4.

In *United States v. Webb*, the U.S. Court of Appeals for the Fourth Circuit recently elaborated on a district court's duties when considering a defendant's motion for a reduction in sentence under the First Step Act.  No. 19-6491, -- F.4d --, 2021 WL 3026835 (4th Cir. July 19, 2021).  The Fourth Circuit noted that while "[d]istrict courts should be afforded significant discretion in addressing requests for sentence reductions under the First Step Act," a district court "must still 'consider a defendant's arguments, give individual consideration to the

---

[5] Staff who received their vaccination in the community rather than a BOP facility are not reflected in these figures. Bureau of Prisons, *COVID-19 Vaccine Implementation*, https://www.bop.gov/coronavirus/ (last visited Aug. 10, 2021).
[6] Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Aug. 10, 2021).

defendant's characteristics in light of the [18 U.S.C.] § 3553(a) factors, determine . . . whether a given sentence remains appropriate in light of those factors, and adequately explain the decision.'" *Id.* at *2-*3 (quoting *United States v. Collington*, 995 F.3d 347, 356 n.4 (4th Cir. 2021)). Further, when a "defendant presents a 'significant amount of mitigation evidence . . . proffered post sentencing,'" the district court must "consider . . . mitigating arguments alongside the aggravating circumstances," and provide the Court of Appeals with an individualized explanation for any modification such that the reviewing court is not "left in the dark" as to the reasons for its decision. *Id.* at *2 (citing *United States v. Martin*, 916 F.3d 389, 398 (4th Cir. 2019)).

In this case, an examination of the sentencing factors indicates that Hopkins is not a suitable candidate for early release. Hopkins' crime of conviction is incredibly serious and involves allegations of violence which could have resulted in death or serious bodily injury to multiple people. This was not Hopkins' first criminal offense, nor was it his first offense involving a firearm. This Court sentenced Hopkins within the advisory guidelines range in consideration of the facts of this case and his criminal history. The nature of the crime for which he was charged and pled guilty warranted the sentence imposed. Hopkins has not presented this Court with any post-conviction mitigation evidence. Overall, this Court is satisfied that a reduction in his sentence at this time, when he has served less than half of the 84 months imposed, would be inconsistent with the deterrent effect of the sentence.

Finally, this Court notes that there is no general constitutional right to appointed counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *United States v. Williamson*, 706 F.3d 405, 416 (4th Cir. 2013). The court has discretion to

appoint counsel in proceedings under 18 U.S.C. § 3582(c) if the interests of justice so require. *See United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000); *see also United States v. Reed*, 482 F. App'x 785, 786 (4th Cir. 2012); *cf.* 18 U.S.C. § 3006A(a)(2)(B) (providing interests of justice standard for appointment of counsel in similar post-conviction proceedings). In this case, the Defendant has not established the interests of justice require appointment of counsel. This Court sees no reason to appoint counsel to the Defendant at this time.

## CONCLUSION

For the foregoing reasons, it is HEREBY ORDERED this 11th Day of August 2021 that Defendant Hopkins' Motion for Compassionate Release (ECF No. 44) is DENIED. Defendant Hopkins' Motion for Appointment of Counsel (ECF No. 43) is also DENIED.

_____/s/_____
Richard D. Bennett
United States District Judge